Morning, your honors. May it please the court. Harini Raghupathy on behalf of the appellant, Mr. Luque-Rodriguez. Mr. Luque's California conviction for manufacturing methamphetamine isn't categorically an illicit trafficking aggravated felony. And that's because its knowledge element is overbroad. I'm going to focus on the only contested element of the 8 U.S.C. section 1326 D inquiry here, which is section D3. Whether the entry of the removal order was fundamentally unfair. And that inquiry has two parts, a due process violation and prejudice. So starting with the due process violation here, section 11379.6 has an overbroad knowledge element compared to the federal manufacturing provision. In California, a defendant needs to know the substance's nature and character as a controlled substance under the California drug schedules. But the Supreme Court has said in McFadden that for the federal manufacturing provision, you only need to know that the substance is listed on the federal drug schedules. The government argues, though, that there is a mens rea requirement that has been established by the California Supreme Court. I think one of the cases they cited is the, if I'm pronouncing it right, the Korea case. So why doesn't that end the inquiry on this point? Because the Korea case establishes that the mens rea for the California manufacturing offense is knowing the substance is listed on the broader California schedules. Whereas McFadden says that for the federal manufacturing provision, you have to know the substance is listed on the narrower federal schedules. So I think an example is helpful to illustrate the overbreath here. So there are certain substances that only California criminalizes that federal law doesn't, like cot and human chorionic gonadotropin or HCG. So you could have a person, for example, who was told and they believe they were manufacturing HCG, but they were in fact manufacturing methamphetamine, which is prohibited under both California and federal law. That person would be guilty of violating the California manufacturing statute because they actually manufactured a California drug, and they believe they manufactured a California drug. And that we require the defendant to give us a real life example of where the mens rea requirement wouldn't be part of the defendant's conviction because of the specification of methamphetamine in the documents. I have two responses to that, Your Honor. In terms of the drug type element, yes, the court can look to the documents. But here we're arguing the overbreath comes from the knowledge element, and the government has agreed with us that the knowledge element is indivisible because a jury in California doesn't need to unanimously agree on which particular controlled substance a defendant believed that he was manufacturing. So the modified categorical approach is simply out of play under DeCamp for the knowledge element. In terms of the realistic probability that the government is saying that Mr. Luque hasn't shown, there's actually two reasons that he has shown there's a realistic probability that California statute is overbroad. The first is we pointed to three sets of cases from the California Courts of Appeal, holding that a defendant in California only needs to know the substance they're dealing with is some drug under California law. So those cases were cited in the opening brief, people versus Romero, people versus Guy, and people versus Gerringer. And those cases establish a realistic probability that all California requires is someone needs to know the drug is prohibited under California law. They don't need to know specifically what drug they're dealing with. Well, counsel, the government has also argued that there is no prejudice here because your client was not removed when he shouldn't have been, because your client was also convicted of a different aggravated felony theft offense receiving stolen property, which everyone agrees was not listed on the notice of removal. What's your argument as to how your client can show prejudice because of that fact? The response is that the receipt of stolen property conviction was nowhere alleged on the notice of intent, which is at ER-20. It was never listed as a factual allegation. But how can your client demonstrate that he was removed when he should not have been, when I don't think you dispute that that is a felony that could have been the basis for the removal? The reason is because this case is controlled and is an all-fours with United States versus Valdivia Flores. And that case was a Section 1326D appeal that involved an administrative removal just like Mr. Luque's. And in that case, the question was whether the prior state conviction was an illicit trafficking aggravated felony. This court held that it wasn't. And then it went on to say that because the prior conviction doesn't qualify as an aggravated felony under the categorical approach, it can't support the asserted basis for removal. Valdivia Flores was therefore prejudiced from his inability to seek judicial review. So the court in Valdivia didn't look to other potential bases of removability that weren't charged. For example, Valdivia was also an undocumented alien and could have been removed because he hadn't been admitted or paroled. But this court didn't conduct that inquiry. It just said because his prior conviction wasn't an illicit trafficking aggravated felony, and that prior conviction was the only fact alleged in the notice, he was prejudiced. I would also note that if this court were to accept the government's position, it would run into problems with another case, which is United States versus Ochoa Oregel. And that was a case in which the parties agreed that the noncitizen wasn't removable on the basis charged in the notice, which was for having invalid entry documents. But didn't the court in that case say, we emphasize that our holding here is limited to a case where an alien is erroneously removed in absentia and did not have a meaningful opportunity to contest the order that ostensibly stripped him or her of his lawful permanent residence status? That related, I believe there were two removal orders at issue in Ochoa Oregel. There was a 2008 removal order and, if I'm correct, a 2012. And so the noncitizen there had to attack both removal orders in order to prevail on the Section 1326D motion. And by the time of the second removal order, the parties had agreed that he was de facto no longer a permanent resident. But didn't the court also say that it was making the decision it did because he retained the protections afforded to lawful permanent residents? That is true that Ochoa Oregel involved a noncitizen who was a lawful permanent resident. I don't believe the analysis hinges on that. And I think if this court were to read Ochoa Oregel that way, we still have Valdivia Flores, which we would point to. And just stepping back, I think what the government is asking the court to do here for prejudice purposes is to say you can consider any fact in the noncitizen's background, regardless of whether the service has actually alleged that fact, and find that the person was removable on some basis and there is no prejudice. But this court has never gone down that route for the prejudice inquiry for Section 1326D purposes. It's always looked at whether the prior conviction has been alleged by the service in the charging document because otherwise there would be due process problems arising from notice and an opportunity to respond. Counsel, you also have an argument with regard to the geometric isomers of methamphetamine. And I'd ask you to address why that argument isn't waived, because as the government argues this is not a legal question, it's a factual question. It wasn't raised in the district court and it wasn't raised in your opening brief. So what's your position as to why, given what the government says is a factual dispute, that isn't waived? My response would be to point to a very similar decision that was United States v. Hernandez, which I submitted via a 28-J letter. And it was unpublished, but it was the exact same procedural posture as Mr. Luque's. Ms. Hernandez raised the Lorenzo issue in supplemental briefing to this court on appeal. She hadn't raised the Lorenzo issue in district court. And the panel of this court in Hernandez found there was no waiver for two reasons. The first was because it was an alternative argument in support of Ms. Hernandez's consistent claim from the beginning that her prior conviction was overbroad. And the court said that under principles of claim preservation, it's claims that are preserved and waived, not arguments. And so it found that she had preserved the argument. I think the same analysis controls here. And then the second reason is because the panel in Hernandez held that it would be a manifest injustice to uphold a conviction on the basis of a legally erroneous basis. And so we would cite the court to that as well. Would it be a manifest injustice here if there was an alternative ground for removal, the receiving stolen property conviction? I mean, what would be manifestly unjust here about your client who would have been removable, even if your argument is correct, but for this being listed on the notice of removal? What's the manifest injustice? Well, the manifest injustice, well, our position, of course, is that this court can't consider the receipt of stolen property conviction. I think if this court accepts that it can receive this, consider the receipt of stolen property conviction, then there is no prejudice. When did this receipt of stolen property aggravated felony come up? Was that ever raised in the immigration proceedings? It was not raised in the immigration proceedings, Your Honor. So it wasn't this wasn't charged in the notice of intent, which was the charging document in the immigration case. The only, on page 20 of the excerpts of record, the only prior conviction that was alleged as the basis for removal was the manufacturing conviction. And then in district court, when we raised a Section 1326D motion and brought a collateral attack based on the criminal conviction, the government also never raised the receipt of stolen property conviction in its response of pleadings. Do you argue that they've waived it? Yes, Your Honor, we do. We do honor that as a preliminary matter. And then, of course, in response to Judge Bennett's questions, we have responses on the merit. But yes, Your Honor. I have a few minutes or seconds remaining, if I may reserve my time. You don't, but I'll give you a minute. I thought I didn't realize I went to read. I apologize. Thank you so much. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the district court in this case correctly held that Mr. Luque Rodriguez's conviction for the manufacture of methamphetamine met the definition of a drug trafficking crime because it would be punishable as a felony under the drug laws. The specific overbreath that's been identified here is exceedingly narrow in scope. It is only if someone could be convicted of this offense while manufacturing what is actually methamphetamine, believing it to be COT or believing it to be some sort of female growth hormone or one of the other narrow class of California prohibited drugs that is broader than the federal drug tables. The problem with that argument, as we've argued, is that the defense has not shown any real-world cases where the California courts have applied the mens rea standard in this exceedingly narrow way. To say that someone is guilty of manufacturing methamphetamine, even though they believe that what they were actually making was one of these narrow class of other drugs. So without that sort of real-world case under Duanes Alvarez, that theoretical possibility of overbreath is not enough to move this entire statute outside of the definition. In addition, this is not one of the cases where the sort of disjunct between the federal and state statutes is sort of readily discernible from the face of the statute. While the drug tables are different, this court has held that we can use the modified categorical analysis to determine which drug was involved. But as to the mens rea, the statute is silent as to mens rea, and that's only a question of how the courts actually apply the statute, as opposed to anything that we can just see by comparing the state versus the federal statutes on their face. Well, I have a question for you. The parties have agreed that there's a divisible issue under the drug statute, right? Correct. Okay, so why do we have to even get into the mens rea? Once it's a divisible statute, that's it, right? Hasn't the Ninth Circuit held? I mean, why are we now looking at a second reason to make it a divisible statute? I think the defense argument is that because the mens rea is an element of the offense and because they have sort of imagined this situation where someone could be convicted under state law with a mens rea element that doesn't match with a federal mens rea, that that separate element, separate and apart from that actual drug itself, is what makes this overbroad. But that's, again, a very narrow idea of overbroad here, and it's one that if this court's going to move this entire statute outside of the federal definition, they have to at least show a realistic probability of that mens rea event occurring, and they haven't. What they've shown is, as the Supreme Court held in Duenas-Alvarez, is essentially legal imagination of this possibility of someone manufacturing methamphetamine, believing it to be a hormone. Counsel, the defendant has argued that even if you're correct, we should still remand this case to the district court to make a factual determination as to geometric isomers of methamphetamine, as we recently did, and as counsel pointed out, an unpublished decision. Why shouldn't we do that? Why shouldn't we remand this to the district court to make that determination? Sure. A couple reasons. First, when the court decided Hernandez, the decision in Lorenzo was still a published opinion. This court has now depublished its opinion in Lorenzo, and when it did so, it sort of said, we're not saying on the facts of this case that geometric isomers do exist. But it wasn't saying they don't. But we're not saying they don't. But then it said, we leave it open. So what has happened since Hernandez has been remanded? I mean, is someone somewhere making that factual determination? I don't know in that case, presumably. I mean, this is a new argument to me. So factually, I guess it's an open question. And I think, Your Honor, in this case, there's some practical reasons why it wouldn't make sense for the court to sort of exercise, to go past the defendant's waiver and allow them a second bite at the apple. This is a defendant who has already been released. Well, why wouldn't it, if it were remanded back, and there's some argument that there is no difference, that it would resolve your problem? Because then there would be a conviction for methamphetamine, right? I mean, so why not remand it back and let that factual determination be made? First, for a practical reason, Your Honor, this defendant, this case is very old. He was arrested over four years ago. He's been released and deported to Mexico almost three years ago. And just from a prudential standpoint, the defendant had three separate 1326D hearings in front of the district court when he could have raised this overbreath as to the geometric isomers and never did. But I think, isn't this a recent, this Lozano case, a recent case? Isn't it just? It is. But isn't it kind of a, it's another theory of overbreath. It's not like a new claim. Yes, it is a theory of overbreath. But it's certainly one that the defendant could have made at the district court three years ago in 1326D hearings, and for that matter, it's a claim that the defendant could have made when he was first deported based on this offense back in 2001. So to not appeal your deportation, to never raise it in the district court, to not raise it in your opening brief and then, you know, years down the road to suddenly have a remand for another hearing when the defendant is not even there and is in Mexico and it's not even clear how practically we would. Well, this case isn't moot, is it? It's not moot. Right, because he has supervisory relief. Right, but he wouldn't be there if we were going to call scientists for an evidentiary hearing to get to the bottom of this. So I think. Well, his attorney would be there. I don't think that makes a difference. He's not here now. I think at this point, now that, at the very least, even if this court were not to hold that this whole claim is waived, it would be subject to plain error review because it was not raised before the district court. And now that Lorenzo has been depublished, it can't be that. What do you think that, what are you telling us the effect of the depublication means? That if we're looking at plain error review, it can't be plain error for the district court not to sui sponte, have dismissed the defendant's indictment in this case, based on the holding of Lorenzo when that's not even published law. And the rule is clear that when there's no authority on the issue, it can't be plain error for the district court not to have dismissed the indictment on these grounds when it was never raised below. So even if it's not waived, we would argue that on plain error review, the district court did not err by not sort of catching this issue. There's nothing that stopped the defendant from raising it below other than nobody having thought of it at that time. That's right. I'm happy to answer any other questions the court might have. Well, I'm interested in your response to counsel's argument that Ninth Circuit law prohibits us from looking at your alternative argument as to the receiving stolen property conviction that was not listed on the removal notice. Your Honor, I think the recent case that is squarely on point here was the Martinez-Hernandez case. And that was one where the notice to appear charged a crime of violence. This court's case law changed so that it was no longer a crime of violence. And then on appeal, the court held that that error was harmless because the defendant should have been removed anyway, because that qualified as a theft offense. The court said he should have been removed, albeit perhaps. It was the same offense, just with a different categorization. That's right. And it was therefore actually charged. That's correct. So unlike this case where 496A was not charged. Right. But what the court made clear was that this is different from the sort of BIA context. When we're on direct appeal or petition from the BIA, this court can't sort of come up with the reasons that the BIA could have affirmed. I really have a problem with that argument and your reliance on Martinez-Hernandez. Because the bottom line is that that offense was charged in the NTA. And you could rely on it no matter how you characterized it, which we all know some of these crimes can be characterized as aggravated felonies, crimes of violence. I mean, you know, crimes of moral turpitude. You can characterize these crimes, a theft offense, in various ways. But as long as it's charged and everyone's on notice of what we're going to be litigating and what's the basis for the deportation. Understood, Your Honor. And that is a distinction from this case. The notice to appear in that case did list the specific crime of violence statute. But ultimately, the question here is different from the sort of direct petition from a BIA. The question here, in this narrow collateral attack realm that Congress has created under 1326D, is was the defendant prejudiced? Would he have been deported? Did he have any possibility of avoiding deportation? And the answer to that is no. Not if it wasn't charged, he had a possibility of not being deported. I mean, the BIA didn't know. Your proposed rule, which is not the rule in the Ninth Circuit, would allow the prejudice inquiry to be unbound from almost anything that had been previously litigated before. And you can see what I'm thinking, that the government would be able to bring in all sorts of uncharged crimes, other things that he could have been convicted of, but he was never indicted for it. It would just go on and on and on. We need to have some boundaries, and right now our rule is that they have to be charged in the NTA. I'm not saying that you lose, necessarily. I'm just saying that that's our law as of this point. Understood, Your Honor. I think our only position is here when there's an actual sort of undisputed, aggravated felony conviction that would eliminate any form of relief from deportation, that that's enough in the final step of 13-2060 to say that there was no prejudice. Even if he had gone in front of an immigration judge, he would not have been able to avoid removal. Isn't it a plausibility issue? In other words, is it plausible that he would have, if this hadn't happened, not have been deported? And because of the prior conviction, it's not plausible that he could have raised it and not been deported? Right. Normally the plausibility would be sort of evaluating his ties to the United States and his criminal history and that sort of thing. But the case law says that once you have an aggravated felony, then it's a foregone conclusion. So then essentially the plausibility is no longer an issue. You are going to be deported, and there's no way to avoid it. All right, counsel. Your two minutes over. Thank you. I'll give opposing counsel a minute to respond. Thank you. Judge Cordon, in response to your question about why are we even talking about the knowledge element, it's because this court has held that just because one element of a statute may be overbroad but divisible so that you can go to the modified categorical approach, if another element is overbroad and indivisible, then the statute as a whole is categorically overbroad. And I would point the court to United States v. Worley, which stands for that Proposition 815F3-614. The government's position that we haven't pointed to any real-world cases to establish over breadth. There are the three cases in our opening brief from California, Guy, Geringer, and Romero, that all show this over breadth, that in California you only need to know that you're manufacturing some California-controlled substance. And lastly, with the prejudice, I would just say to the court that if this court were to consider the receipt of stolen property conviction, even though it wasn't included and charged in the notice, then Valdivia Flores would have come out the other way. And so this court would be creating conflict with Valdivia Flores if it were to adopt the government's approach. Thank you very much. Thank you very much, counsel. U.S. v. Luke Rodriguez is submitted.
judges: Wardlaw, Cardone, Bennett